IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| QUADRATEC, INC. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 13-6384 |
| TURN 5, INC. d/b/a EXTREME TERRAIN | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                     **AUGUST  13 , 2015**

Presently before the Court is Defendant's Motion to Partially Dismiss Plaintiff's Second

Amended Complaint.  (ECF No. 14.)  For the following reasons, the Motion will be granted in

part and denied in part.

I.      **BACKGROUND**

        A.      **Factual Background[1]**

        This copyright infringement action arises out of the use by Defendant Turn 5, Inc. d/b/a

Extreme Terrain ("Turn 5"), of advertising and marketing materials created by Plaintiff,

Quadratec, Inc. ("Quadratec"), for Jeep® branded products.  Plaintiff and Defendant are

competing companies in the business of selling removable soft tops and other aftermarket parts

and accessories for Jeep® branded vehicles, such as the Wrangler.  (Second Am. Compl. ¶ 10,

ECF No. 10.)  Plaintiff and Defendant market the same aftermarket Jeep® products to

consumers.  (*Id.* ¶ 21.)  Plaintiff advertises its products to Jeep® owners and enthusiasts through

magazine advertisements, direct mail print catalogs, and through its website,

www.quadratec.com.  (*Id.* ¶¶ 12, 13.)  Plaintiff launched its website in 1995.  (*Id.* ¶ 13.)  Plaintiff

_____

        [1] In accordance with the standard of review for a Rule 12(b)(6) motion to dismiss, we
will "accept all well-pleaded allegations in the complaint as true, and view them in the light most
favorable" to Plaintiff, the non-moving party.  *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir.
2004).

alleges that it invests substantial resources in the advertising of its products by "creating tens of thousands of unique photographs" and writing descriptions of the photographs. (*Id*. ¶ 14.) The result, according to Plaintiff, is a catalog of unique "Quadratec Product Presentations." (*Id*. ¶¶ 14, 15.)[2] Substantial time and resources are dedicated to the creation of the Quadratec Product Presentations. (Second Am. Compl. ¶ 15.) According to Plaintiff, the Quadratec Product Presentations, "reflected in part by its original product photography, differentiate it from all of its competitors in the automotive market." (*Id*. ¶ 16.) Plaintiff asserts that its Product Presentations "constitute proprietary and economically valuable material" used to influence customers to purchase its products. (*Id*. ¶ 18.)

Plaintiff alleges that Defendant used unauthorized Quadratec Product Presentations to promote Defendant's products for sale in its catalog and through its website, www.extremeterrain.com. (*Id*. ¶¶ 22, 23.) On December 4, 2012, Plaintiff sent Defendant a letter requesting that Defendant discontinue using Quadratec Product Presentations. (*Id*. ¶ 24 & Ex. A.) Plaintiff provided three examples of Defendant's alleged violations in its letter. (*Id*. at Ex. A.) On December 11, 2012, Defendant sent a letter in response to Plaintiff, indicating that Defendant had removed the images and conducted an audit to ensure that it did not use any Quadratec Product Presentations. (*Id*. ¶ 25 & Ex. B.)

Despite its representations, Defendant continued to use Quadratec Product Presentations for advertising its products. (*Id*. ¶ 27.) On March 29, 2013, Plaintiff sent Defendant another letter, demanding that Defendant cease and desist from the continued use of Quadratec Product Presentations without Plaintiff's authorization. (*Id*. ¶ 27 & Ex. C.) Plaintiff also demanded that Defendant discontinue use of Defendant's catalog until all Quadratec Product Presentations were

---

[2] Quadratec Product Presentations specifically refer to the photographs and texts Quadratec uses to advertise Jeep® products to consumers.

2

removed.  (*Id*. at Ex. C.)  In the letter, Plaintiff included ten examples of the alleged copyright violations.  (*Id*.)

Plaintiff states that after it sent the March 29, 2013 letter, Defendant nevertheless continued to use Quadratec Product Presentations without authorization.  (*Id*. ¶¶ 28-30.)  On April 2, 2013, Plaintiff discovered another Quadratec photograph on Defendant's Facebook page.  (*Id*. ¶ 28.)  The Quadratec photograph contained a superimposed "Extreme Terrain" logo on it.  (*Id*. ¶ 29.)  On October 15, 2013, Plaintiff discovered seven additional unauthorized uses of Quadratec intellectual property by Defendant.  (*Id*. ¶ 30.)  Specifically, Plaintiff discovered that Defendant used seven original Quadratec photographs, used to endorse and sell Seat Armour™ Towels, to promote the sale of the same products on their Extreme Terrain website.  (*Id*. ¶ 30 & Ex. D.)

Plaintiff also alleges that Defendant engaged in false advertising and unfair competition.  (*Id*. ¶¶ 31-36.)  Specifically, Plaintiff alleges that Defendant falsely advertised the Baricade Soft Top products by claiming that they exceed original equipment manufacturer ("OEM") standards and are made from Black diamond sailcloth material, when in fact they do not and are not.  (*Id*. ¶¶ 33-34.)  Plaintiff states that Defendant promotes its Baricade Soft Top products with the intent to mislead consumers and compete unfairly with competitive products, such as Plaintiff's Quadratec products.  (*Id*. ¶¶ 34-36.)

In response to Defendant's unauthorized use of the Quadratec Product Presentations, Plaintiff registered the images with the Unites States Copyright Office.  (*See id*. at Ex. E, G, H.)  The first Quadratec Product Presentation that Plaintiff registered is the photograph created to promote the Hood Hold Down ("Copyrighted Work I").  (*Id*. ¶ 38 & Ex. E.)  The effective date of registration for the Hood Hold Down is April 2, 2013.  (*Id*.)  The date of the first publication

is January 22, 2010.  (*Id*.)  Next, Plaintiff registered all of the photographs and text contained on

the Quadratec website ("Copyrighted Work II").  (*Id*. ¶ 54 & Ex. G.)  The effective date of

registration for Copyrighted Work II is September 23, 2013.  (*Id*.)  Finally, Plaintiff registered

another collection of photographs and text contained on its website ("Copyrighted Work III").

(*Id*. ¶ 69 & Ex. H.)  The effective date of registration for Copyrighted Work III is September 25,

2013.  (*Id*. at Ex. H.)  All of the Quadratec website images have a publication completion date of

2013 and do not include a date of the first publication.  (*Id*. at Exs. G, H.)

>   **B.     Procedural History**

On December 19, 2013, Plaintiff filed a Second Amended Complaint.[3]  Plaintiff asserts

the following claims against Defendant:  three counts of copyright infringement (Counts I, II,

and III); unfair competition under the Lanham Act (Count IV); false advertising and unfair

competition under the Lanham Act (Count V); common law unfair competition by

misappropriation (Count VI); common law fraud (Count VII); violations of the Pennsylvania

Deceptive Trade Practices Act (Count VIII); and common law unjust enrichment (Count IX).

(Second Am. Compl.)

On December 31, 2013, Defendant filed a Motion to Partially Dismiss Second Amended

Complaint and an accompanying Memorandum.  (Def.'s Mem., ECF No. 14.)  On January 17,

2014, Plaintiff filed a Response in opposition to the Motion.  (Pl.'s Resp., ECF No. 19.)  On

January 29, 2014, the parties filed a stipulation wherein they agreed to the dismissal of (1) Count

VIII, which alleges claims under the Pennsylvania Deceptive Trade Practices Act, and (2) claims

for statutory damages and attorneys' fees under Counts I and III, which allege copyright

infringement.  (Stip., ECF No. 21.)

---

[3] Plaintiff filed its original complaint on November 1, 2013 (ECF No. 1), and first
amended complaint on December 16, 2013 (ECF No. 5).

## II.      LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Failure to state a claim upon which relief can be granted is a basis for dismissal of the complaint. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "A complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009).

In determining whether dismissal is appropriate, courts use a two-part analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id*. at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 211 (internal quotation marks and citation omitted). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

5

common sense.'"  *See McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting

*Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

Defendant seeks to dismiss Counts I, II, and III, which allege copyright infringement;

Count IV, which alleges unfair competition under the Lanham Act; Count VI, which alleges

common law unfair competition by misappropriation; and Count IX, which alleges unjust

enrichment.[4]

### A.   Copyright Infringement Claims (Counts I, II, and III)

Defendant contends that Plaintiff failed to allege sufficient facts to state a cause of action

for copyright infringement.  Specifically, Defendant asserts that Plaintiff's claims fail because, in

addition to citing specific examples of infringement, Plaintiff also alludes to other images that

have potentially been infringed, but fails to provide details about those images.  (Def.'s Mot. 5-

6.)  Defendant contends that Plaintiff "failed to allege a key element of a cause of action for

copyright infringement, specifically, which of the 'thousands of images and text' . . . [Plaintiff]

claims were infringed by Turn 5."  (*Id*. at 2 (quoting Second Amended Complaint).)  Defendant

also argues that Plaintiff's copyright claims fail because Plaintiff does not state when the alleged

infringements occurred.  (*Id*. at 6.)

Generally, to establish a claim for copyright infringement under federal law, a plaintiff

must establish:  "(1) ownership of a valid copyright; and (2) unauthorized copies of original

elements of the plaintiff's work."  *Dun & Bradstreet Software Servs. v. Grace Consulting, Inc*.,

307 F.3d 197, 206 (3d Cir. 2002).  To survive a motion to dismiss, a complaint alleging

copyright infringement must allege:  "(1) which specific original works are the subject of the

---

[4] Defendant does not seek dismissal of Count V, which alleges false advertising under the
Lanham Act, and Count VII, which alleges common law fraud.

copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the works in question have been registered with the Copyright Office in accordance with the statute; and (4) by what acts and during what time the defendant infringed the copyright." *EEOC v. Vanguard Grp.*, No. 04-4126, 2006 U.S. Dist. LEXIS 17935, at *12 (E.D. Pa. Apr. 7, 2006); *see also Gee v. CBS, Inc.*, 471 F. Supp. 600, 643 (E.D. Pa. 1979), *aff'd*, 612 F.2d 572 (3d Cir. 1979). Defendant's arguments center on the first and fourth elements.[5]

### 1.   *Specific Original Works Subject to the Copyright Claim*

Defendant's contention that Plaintiff failed to identify the original works subject to its claims is contradicted by the Second Amended Complaint and its exhibits.  Each of the three copyright infringement claims asserted in the Second Amended Complaint are based upon registered copyrighted works—Copyrighted Work I, Copyrighted Work II, and Copyrighted Work III.  Copyrighted Work I is an image of the "Hood Hold Down" product that was registered with the United States Copyright Office, and assigned Copyright Registration No. VA 1-854-077.  Copyrighted Work II is "a collection of thousands of photographs and text used on its website" that was registered with the United States Copyright Office and assigned Copyright Registration No. VAu 1-143-820.  Attached to the Second Amended Complaint is the Certificate of Registration as well as a DVD containing the images and text subject to Copyrighted Work II. Copyrighted Work III is a collection of photographs used on its website that was registered with the United States Copyright Office, and assigned Copyright Registration No. VAu-144-356. Attached to the Second Amended Complaint is the Certificate of Registration as well as copies of the images subject to Copyrighted Work III.

---

[5] Defendant raises no arguments with respect to the second and third elements, namely whether Plaintiff owns the copyrights at issue and had the copyrights registered.  The Second Amended Complaint states that Plaintiff owns Copyrights I, II, and III, and attaches Certificates of Registrations for each work.  (Second Am. Compl. ¶¶ 38, 54, 69 & Exs. E, G, H.)  The second and third elements are satisfied.

Plaintiff sent two letters to Defendant, each one providing specific examples of the images and text it alleged that Defendant was using without authorization.  Specifically, on December 4, 2012, Plaintiff provided three examples of Quadratec Product Presentations that were infringed by Defendant.  Again, on March 29, 2013, Plaintiff provided ten examples of Quadratec Product Presentations used by Defendant.  On both occasions, Plaintiff provided not only the Quadratec images and text, but also a printout from Defendant's website showing exactly how Defendant had copied and used the Quadratec images and text.  Plaintiff has provided sufficient details of the original works subject to its copyright infringement claims.  *See Richard Goettle, Inc. v. Burgess & Niple, Inc.*, No. 10-187, 2010 U.S. Dist. LEXIS 131944, at *12-13 (S.D. Ohio Dec. 14, 2010) (finding that plaintiff adequately stated a copyright claim where it pleaded ownership of the copyrighted work, provided copies of the certificates of registration, and "attached comparison sheets with examples to illustrate the manner" by which the works were infringed).

Defendant's reliance on *Palmer Kane LLC v. Scholastic Corporation, et al*., No. 12-3890, 2013 U.S. Dist. LEXIS 27196 (S.D.N.Y.  Feb. 27, 2013), is misplaced.  In *Palmer Kane*, the plaintiff provided a list of copyrighted works at issue; however, the complaint indicated that the "list is not exhaustive."  *Id*. at *8.  The court determined that because the plaintiff only provided examples of the copyrighted works subject to its claim, the claim failed because the first element was not met.  *Id*. at *7-8.  *Palmer Kane* is easily distinguished.  Here, Plaintiff alleged the copyrighted works at issue:  Copyrighted Work I, Copyrighted Work II, and Copyrighted Work III.  Plaintiff also provided the Certificates of Registration for, and copies of all of the images and the text comprising, each of the Copyrighted Works.  Plaintiff has provided Defendant with

fair notice of the claims it asserts.[6]  The Complaint sufficiently states a plausible claim for copyright infringement.  *See Lefkowitz v. John Wiley & Sons, Inc*., No. 13-6414, 2014 U.S. Dist. LEXIS 75650, at *23 (S.D.N.Y. June 2, 2014) (finding that the plaintiff adequately alleged the specific original works element of a copyright infringement claim when he provided a chart listing the images subject to the claims and alleged that each of the copyrighted works were registered); *Schneider v. Pearson Educ., Inc.*, No. 12-6392, 2013 U.S. Dist. LEXIS 49727, at *7-8 (S.D.N.Y. Apr. 5, 2013) (declining to dismiss copyright infringement claim where the plaintiff provided a list of the photographs subject to infringement, but indicated that the infringement was not limited to these claims, and holding that the plaintiff's claim was limited to the works identified in the list).

<em>2.    Acts of Infringement</em>

Defendant also argues that Plaintiff fails to allege when the acts of infringement occurred, instead, "point[ing] to a span of 12 years in which the images and/or text may have been copied by Turn 5."  (Def.'s Mot. 6.)  Defendant's argument is misguided.  Plaintiff focuses the time frame of Defendant's infringing acts by listing specific examples in its letters to Defendant. Plaintiff alleges a succession of alleged infringements that began prior to December 4, 2012, on March 29, 2013, on April 2, 2013, and on October 15, 2013.  (Second Am. Compl. ¶¶ 28, 55.) Although Plaintiff did not provide the exact date of infringement for each of the images covered by Copyrighted Works I, II, and III, "it is not fatal to [Plaintiff's] copyright claim that the Complaint fails to specify how each particular photograph has been infringed."  *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 618 (S.D.N.Y. 2013); *see also Lefkowitz*, 2014 U.S. Dist. LEXIS 75650, at *23 (holding that the plaintiff met the fourth requirement of a copyright

---

[6] To the extent that Plaintiff seeks to assert claims based on images or text not included within the Copyrighted Works I, II, and III, those claims will not be permitted.

9

infringement claim because he "sufficiently narrow[ed] the time period" of the infringing conduct by alleging the date that it started); *E. Broad. Am. Corp. v. Universal Video, Inc.*, No. 04-5654, 2006 U.S. Dist. LEXIS 17032, at *9-10 (E.D.N.Y. Mar. 24, 2006) (finding that plaintiff stated a copyright infringement claim where the complaint alleged that the infringement took place on or before a particular date). Plaintiff states plausible copyright infringement claims in Counts I, II, and III. Defendant's Motion to dismiss these claims will be denied.

## B. Statutory Damages and Attorneys' Fees for Copyright Infringement Claim (Count II)

Defendant also contends that, to the extent that Count II survives the substantive arguments raised in support of dismissal, the Court should preclude Plaintiff from recovering statutory damages and attorneys' fees for this Count.[7] Sections 504 and 505 of the Copyright Act provide for statutory damages and attorneys' fees, respectively, for copyright infringement claims asserted under the Act. *See* 17 U.S.C. §§ 504(a)(2) & (c), 505. These remedies are unavailable, however, where a plaintiff fails to register the copyright either before the alleged infringing conduct begins, or within three months of the date that the copyright was first published. *See* 17 U.S.C. § 412.[8] Defendant contends that Plaintiff delayed filing its copyright

---

[7] Plaintiff stipulated to the withdrawal of its claims for statutory damages and attorneys' fees with respect to Counts I and III. (Stip.)

[8] Section 412 of the Copyright Act states that:

In any action under this title . . . no award of statutory damages or attorney's fees, as provided by sections 504 and 505, shall be made for—(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.

registration until long after the first infringement occurred, and thus, is not entitled to statutory damages or attorneys' fees under the Act.

Copyrighted Work II has an effective registration date of September 23, 2013.  The Second Amended Complaint states that the images and text that comprise Copyrighted Work II were accessed and copied by Defendant, without authorization, as set forth in Exhibits A,  C, and D.  (Second Am. Compl. ¶ 56.)  Exhibit A is a December 4, 2012 Letter from Plaintiff to Defendant that identifies three examples of images and text that were allegedly infringed by Defendant.  (*Id*. at Ex. A.)  Exhibit C is a March 29, 2013 Letter from Plaintiff to Defendant that identifies eleven examples of images and text that were allegedly infringed by Defendant.  (*Id*. at Ex. C.)  Exhibit D comprises copies of seven images that were allegedly infringed by Defendant. (*Id*. at Ex. D.)  Based on the allegations in the Second Amended Complaint, the infringement of Copyrighted Work II began as early as December 4, 2012, and the work was registered over nine months later.  Therefore, it would appear that Plaintiff is not entitled to statutory damages and attorneys' fees under Sections 504 and 505 of the Copyright Act.

Plaintiff attempts to circumvent the statutory requirements by contending that Defendant's "pattern of infringement over a span of many months constitutes new infringements of different portions of Plaintiff's work," as opposed to continuous or repeated infringement of the same work.  (Pl.'s Resp. 12.)  Plaintiff concedes that portions of Copyrighted Work II were infringed as early as December 2012, but asserts that other portions—specifically, the seven images comprising Exhibit D to the Complaint—were infringed on October 15, 2013, which was after the registration date of Copyrighted Work II.   In other words, Plaintiff argues that the images discovered in October 2013 constitute a discrete infringement that restarts the clock for calculating entitlement to statutory damages and attorneys' fees.  Plaintiff's argument turns on

11

the interpretation of when the infringement "commenced" under the Act.  Plaintiff invites us to

construe the October 2013 discovery as a discrete infringement that commenced for purposes of

Sections 504 and 505 at that time.

While considering when the "commencement" of infringement occurs, one court in this

District determined that, in light of the Copyright Act's purpose to encourage registration of

works, "interpreting 'commencement of infringement' as the time when the first act of

infringement in a series of on-going discrete infringement occurs . . . would best promote the

early registration of the copyright . . . and strongly encourage prompt registration."  *Whelan*

*Assocs. v. Jaslow Dental Lab., Inc*., 609 F. Supp. 1325, 1331 (E.D. Pa. 1985) (holding that

infringement commenced for purposes of Section 412 when the first discrete act of infringement

occurred, barring attorneys' fees for other continuous acts of infringement that occurred after the

registration).  Another court, in the District of Delaware, utilized traditional tools of statutory

interpretation to conclude that infringement commences when the first act in a series of acts

constituting continuing infringement occurs.  *Leonard v. Stemtech Health Scis., Inc*., No. 08-67,

2011 U.S. Dist. LEXIS 139221, at *40-41 (D. Del. Dec. 5, 2011), *approved and adopted*, 2012

U.S. Dist. LEXIS 42743 (D. Del. Mar. 28, 2012).  Indeed, courts in this Circuit have uniformly

found that statutory damages and attorneys' fees are not permitted if infringement occurs before

registration of the copyright, even when there is a series of continuing infringements of the same

work that occurs after registration.  *See Leonard*, 2011 U.S. Dist. LEXIS 139221, at *41 (citing

cases and noting that "all of the district courts in this Circuit that have considered the issue agree

with this statutory interpretation"); *Morgan v. Hawthorne Homes, Inc.*, No. 04-1809, 2011 U.S.

Dist. LEXIS 59210, at *4-6 (W.D. Pa. June 2, 2011) (finding that that 17 U.S.C. § 412 barred

recovery where "the initial infringement occurred prior to the registration, [and d]efendants

continued to infringe on his copyrights post-registration"); *Gloster v. Relios, Inc*., No. 02-7140, 2006 U.S. Dist. LEXIS 43995, at *5-6 (E.D. Pa. June 28, 2006) (concluding that attorneys' fees and statutory damages were unavailable when the defendant committed separate acts of infringement of the same copyrighted work, some that occurred prior to registration and some that occurred after).

Plaintiff attempts to distinguish its claim from this prevailing view by arguing that, despite the fact that the product presentations comprising Copyrighted Work II were registered as one work, Defendant infringed separate portions of this copyrighted work, and those portions of the work that were infringed in December 2013 satisfy the requirements of Section 412 and entitle Plaintiff to an award of statutory damages and attorneys' fees. We disagree. Section 504 states that the copyright infringement claimant may elect to recover statutory damages in lieu of actual damages and profits "for all infringements involved in the action, with respect to any *one work*." 17 U.S.C. § 504(c)(1) (emphasis added). The section goes on to clarify that "all the parts of a compilation or derivative work constitute one work." *Id*. The allegations in the Second Amended Complaint suggest that Copyrighted Work II is a single work or compilation, and that, on various occasions, and in a continuous manner, Defendant infringed different parts of that work. (Second Am. Compl. ¶ 59 (alleging that "defendant has infringed and continues to infringe Plaintiff's Copyrighted Work II.").) Plaintiff has provided no authority in this Circuit that would support its position that the allegations in Count II are distinguishable and should be treated any differently for purposes of Section 412.[9] Defendant's request to dismiss Plaintiff's claim for statutory damages and attorneys' fees in Count II of the Complaint will be granted.

---

[9] In fact, at least one of the cases relied upon by Plaintiff actually supports Defendant's position that the remedies contemplated by Sections 504 and 505 are not available in this case. *See Johnson v. Univ. of Va.*, 606 F. Supp. 321, 325 (W.D. Va. 1985) (rejecting the plaintiff's request for attorneys' fees and statutory damages and stating that plaintiff "seeks to escape the

C.        **Claim of Unfair Competition under the Lanham Act (Count IV)**

Defendant seeks dismissal of Count IV of the Complaint, which alleges unfair

competition under the Lanham Act.[10]   Count IV states as follows:

> Defendant' unauthorized use of Quadratec's Product Presentations, proprietary
> photographs, and original text of plaintiff, to sell products in direct competition
> with Plaintiff, including but not limited to superimposing its "Extreme Terrain"
> brand on Plaintiff's original photos, constitutes unfair competition and thereby
> violates 15 U.S.C. § 1125(a)(1) in that defendant is using in commerce a
> combination of words, terms, names, symbols and images and a false or
> misleading representation of fact, which is likely to cause confusion or to cause
> mistake or to deceive as to the affiliation, connection or association of Turn 5
> with Quadratec, or as to the origin of Turn 5's goods and services, or as to the
> sponsorship or approval of Turn 5's goods and services, or as to the sponsorship
> or approval of Quadratec's goods and services or commercial activities by Turn 5.
> By falsely branding Quadratec's image and claiming it as its own, Defendant also
> violates 15 U.S.C. § 1125(a)(1) by using in commerce a false and misleading
> representation of fact which, in commercial advertising or promotion of its brand,
> misrepresents the nature, characteristics, and/or quality of its goods, services, or
> commercial activities.

(Second Am. Compl. ¶ 84.)

Plaintiff's claim falls under Section 1125(a)(1) of the Lanham Act, which provides:

> (1) Any person who, on or in connection with any goods or services, or any
> container for goods, uses in commerce any word, term, name, symbol, or device,
> or any combination thereof, or any false designation of origin, false or misleading
> description of fact, or false or misleading representation of fact, which—

> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the
> > affiliation, connection, or association of such person with another person,
> > or as to the origin, sponsorship, or approval of his or her goods, services,
> > or commercial activities by another person, or

_____

bar of § 412 by arguing that a copyright infringement 'commenced' within the meaning of § 412
each time defendants used any of plaintiff's photographs.  The court believes that ascribing such
a meaning to the term commenced would totally emasculate § 412").

[10] The Lanham Act, 15 U.S.C. §§ 1051, *et seq.* is the federal statute for trademark
infringement and unfair competition claims.  *See Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S.
763, 767-68 (1992); *see also AFL Phila. LLC v. Krause*, 639 F. Supp. 2d 512, 521 (E.D. Pa.
2009) (internal quotes omitted) (noting that the purpose of the Lanham Act is to "make
actionable the deceptive and misleading use of marks and to protect persons engaged in . . .
commerce against unfair competition").

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Claims falling under Subsection (A) are known as false designation of origin, unfair competition, or false association claims, while claims falling under Subsection (B) are known as false advertising claims. *AFL Phila. LLC*, 639 F. Supp. 2d at 521.

Although it is not entirely clear, Plaintiff appears to assert claims under both Subsections (1)(A) and (1)(B) of Section 1125(a). Plaintiff alleges generally that Defendant's unauthorized use of the product presentations constitutes unfair competition under section 1125(a)(1)(A). (*See* Second Am. Compl. ¶ 84.) Plaintiff also alleges that when Defendant copied one of Plaintiff's hold down hood photographs, superimposed its brand name, "Extreme Terrain" on the photograph, and published the "falsely branded" photograph on its website, it violated section 1125(a)(1)(B). Although Count IV is titled as an "unfair competition claim," we will treat it as claims asserted under both subsections of the statute. *See Proper v. Crawford Cnty. Corr. Facility*, No. 06-279, 2010 U.S. Dist. LEXIS 100672, at *6 & n.6 (W.D. Pa. Sept. 24, 2010) (noting that the "content of the claims [should] be analyzed as pled, not as titled"). We will address the two claims separately.

1.    *Claim under Section 1125(a)(1)(A)—False Designation of Origin*

Section 1125(a)(1)(A) generally prohibits "false designation of origin . . . which is likely to cause confusion . . . as to the origin . . . of goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A). The Supreme Court made clear that the term "origin" in this Section

applies only to "the producer of the tangible goods that are offered for sale, and not to the author

of any idea, concept, or communication embodied in those goods." *Dastar Corp. v. Twentieth*

*Century Fox Film Corp.*, 539 U.S. 23, 37 (2003).  The Court's interpretation of "origin" was

intended to distinguish Copyright Act claims from Lanham Act claims.  The Court stated that

Lanham Act claims "were not designed to protect originality or creativity" because those rights

are protected by the Copyright Act.  *Id.*  Permitting Lanham Act claims to cover things other

than tangible goods "would be akin to finding that [Section 1125(a)(1)(A)] created a species of

perpetual patent and copyright, which Congress may not do."  *Id.*

   Defendant argues that there can be no confusion about the origin of the goods being sold

because Plaintiff and Defendant sell exactly the same product— aftermarket parts and

accessories for Jeep® branded vehicles.  Plaintiff responds that the "goods" at issue are not the

aftermarket Jeep® products themselves, but the catalog services through which Plaintiff sells the

Jeep® products.  Plaintiff argues that Defendant's use of the Quadratec Product Presentations

invokes the language of the statute because the presentations are a combination of words and

symbols that are "likely to cause confusion" as to the "origin . . . of goods, services, or

commercial activities."  In other words, Plaintiff claims that Defendant's use of the product

presentations is likely to confuse Plaintiff's customers into believing that "identical product

presentations in both Plaintiff's and Defendant's catalogs" means that the "catalog sources are

the same or otherwise affiliated."  (Pl.'s Resp. 8.)

   In light of the Supreme Court's definition of "origin" under Section 1125(a)(1)(A), we

must reject Plaintiff's argument.  The phrase "origin of goods" under the Lanham Act refers to

"the producer of the tangible goods that are offered for sale."  *Dastar*, 539 U.S. at 37.  The

tangible goods at issue here are the aftermarket Jeep® products.  Plaintiff attempts to circumvent

the prerequisites for maintaining a claim under Section 1125(a)(1)(A) by contending that the catalog services themselves are the goods at issue.  However, it is not disputed that neither Plaintiff nor Defendant is in the business of selling catalog services.  Instead, they are in the business of selling aftermarket Jeep® products.  There can be no confusion as to the origin of these goods, because aftermarket Jeep® products—whether sold by Plaintiff or Defendant—are manufactured by the same source.  Plaintiff essentially seeks protection of its marketing of its products.  However, the Lanham Act does not protect "originality or creativity," nor does it "creat[e] a cause of action for, in effect, plagiarism."  *Id.*; *see also Avalos v. IAC/Interactivecorp.*, No. 13-8351, 2014 U.S. Dist. LEXIS 153890, at *10-11 (S.D.N.Y. Oct. 30, 2014) (dismissing Lanham Act claim alleging that the defendant used the plaintiff's photographs without authorization because the Lanham Act does not protect originality or creativity); *Smartix Int'l Corp. v. MasterCard Int'l LLC*, No. 06-5174, 2008 U.S. Dist. LEXIS 108548, at *19 (S.D.N.Y. Sept. 30, 2008) (explaining that the Lanham Act does not protect claims of "the unattributed copying of another's designs and ideas"); *cf. Maule v. Phila. Media Holdings*, LLC, 710 F. Supp. 2d 511, 518-19 (E.D. Pa. 2008) (dismissing Lanham Act claim against defendant newspaper for its use of the plaintiff's photographs because "while [defendant] may not have been the originator of the photographs contained in its newspaper, it was the originator of the newspaper itself, the actual good being offered for sale to the public").  By copying Plaintiff's Product Presentations, Defendant's rights are protected under the Copyright Act.  Plaintiff's claim under Section 1125(a)(1)(A) will be dismissed.

        2.     *Claim under Section 1125(a)(1)(B)—False Advertising*

     Plaintiff also appears to assert a false advertising claim under Section 1125(a)(1)(B). Plaintiff alleges that "[b]y falsely branding Quadratec's image and claiming it as its own,

Defendant also violates 15 U.S.C. § 1125(a)(1) by using in commerce a false and misleading representation of fact which, in commercial advertising or promotion of its brand, misrepresents the nature, characteristics, and/or quality of its goods, services, or commercial activities." (Second Am. Compl. ¶ 84.)  Plaintiff merely recites the statutory language and makes no other allegations in support of its false advertising claim.  Nevertheless, Plaintiff's claim fails on the merits.

Section 1125(a)(1)(B) protects against misrepresentations about "the nature, characteristics, [or] qualities . . . [of] goods."   To assert a false advertising claim under this Subsection of the statute, a plaintiff must allege:

> 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc*., 653 F.3d 241, 248 (3d Cir. 2011) (quoting *Warner-Lambert v. Breathasure*, 204 F.3d 87, 91-92 (3d Cir. 2000).

Plaintiff's argument fails under the first element of the claim.  Plaintiff has not alleged that Defendant made a false or misleading statement about its goods, or about Plaintiff's goods—aftermarket Jeep® products.  Instead, Plaintiff claims that Defendant made a false statement about the photographs taken of those goods.  Specifically, Plaintiff claims that by superimposing its own brand name on a photograph authored by Plaintiff, Defendant misrepresents to consumers that Plaintiff's photograph and catalog services originated with Defendant.  Plaintiff does not allege that Defendant "misrepresents the nature, characteristics, qualities, or geographic region" of the aftermarket Jeep® products themselves, 15 U.S.C. § 1125(a)(1)(B), but rather the marketing materials used to promote those products.  These allegations are not sufficient to state

18

a claim for false advertising under Section 1125(a)(1)(B).  *See Smartix Int'l*, 2008 U.S. Dist.
LEXIS 108548, at *21 (concluding that allegations as to "the originating source of the
technology underlying defendants' [electronic sports marketing] programs, is not a
misrepresentation as to the inherent 'nature, characteristics [or] quality' of the programs
themselves").  Plaintiff's false advertising claim under Section 1125(a)(1)(B) will be dismissed.

**D.      Preemption of State Law Claims by the Copyright Act**

Finally, Defendant argues that the Copyright Act preempts Plaintiff's state law claims of
unfair competition by misappropriation and unjust enrichment.  (Def.'s Mem. 12.)  The
Copyright Act preempts state common law or statutory claims that fall within the subject matter
of copyright, and that create rights equivalent to any of the exclusive rights created by copyright
law.  17 U.S.C. § 301(a) ("[A]ll legal or equitable rights that are equivalent to any of the
exclusive rights within the general scope of copyright . . . and come within the subject matter of
copyright . . . are governed exclusively by [the Copyright Act] . . . . [N]o person is entitled to any
such right or equivalent right . . . under the common law or statutes of any State."); *see also
Orson, Inc. v. Miramax Film Corp*., 189 F.3d 377, 382 (3d Cir. 1999).  In order for a state
common law claim to be preempted by the Copyright Act, a defendant must show that the state
law claim protects rights that are equivalent to the exclusive rights of copyright.  *Dun &
Bradstreet Software Servs.*, 307 F.3d at 216-17.

The Third Circuit uses the "extra element test" to determine whether a state law claim is
functionally equivalent to or qualitatively different from a right protected by the Copyright Act.
*See id*.  Under this test, "[i]f a state cause of action requires an extra element, beyond mere
copying, preparation of derivative works, performance, distribution or display, then the state
cause of action is qualitatively different from, and not subsumed within, a copyright

infringement claim." *Id.* at 217 (citing *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1164 (1st Cir. 1994)). If the state law claim requires an extra element, then the copyright infringement claim will not preempt the state action. *Id.*; *see also Brown v. Suburban Life Publ'g, LLC*, No. 10-245, 2011 U.S. Dist. LEXIS 41632, at *15 (E.D. Pa. Apr. 15, 2011) ("[A] state law claim that invokes rights 'that are equivalent to the exclusive rights within the general scope of copyright' is subject to preemption." (quoting *Orson*, 189 F.3d at 382)); *Harris v. Winfrey*, No. 10-5655, 2011 U.S. Dist. LEXIS 28869, at *9-12 (E.D. Pa. Mar. 18, 2011) (applying extra element test and concluding that the plaintiff's claims for tortious conversion, unjust enrichment, and quantum meruit were preempted by the Copyright Act). Although some state law claims may appear at first glance to require an element beyond the scope of a copyright claim, "[n]ot every extra element is sufficient to establish a qualitative variance between rights protected by federal copyright law and that by state law." *Dun & Bradstreet*, 307 F.3d at 218. Indeed, "[c]ourts have taken a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp. 2d 413, 422 (W.D. Pa. 2008) (internal quotation marks omitted).

### 1. Misappropriation by Unfair Competition (Count VI)

In Count VI, Plaintiff alleges misappropriation on the part of Defendant "by convening Plaintiff's proprietary business information to defendant's use, and using such information to advertise and sell products, and profit therefrom, in direct competition with the plaintiff." (Second Am. Compl. ¶ 88.) Defendant seeks dismissal of this claim, arguing that the claim is preempted by the Copyright Act because Plaintiff has asserted no additional facts in support of the claim that distinguishes it from a copyright infringement claim. (Def.'s Mot. 12-13.)

Plaintiff responds that its misappropriation by unfair competition claim is not preempted because it requires proof of an extra element not required by copyright infringement claims.  Plaintiff also contends that Defendant deceived and misled consumers by "passing off" the Quadratec advertisements as Extreme Terrain advertisements.

Plaintiff characterizes its claim as a passing off claim.  There are two types of passing off claims.  "Passing off . . . occurs when a producer misrepresents his own goods or services as someone else's."  *Dastar*, 539 U.S. at 28 n.1; *see also Fun-Damental Too, Ltd. v. Universal Music Grp., Inc.*, No. 97-1595, 1997 U.S. Dist. LEXIS 9597, at *13 (E.D. Pa. July 8, 1997) (noting that passing off is when a "wrongdoer sells its products as the plaintiff's").  Reverse passing occurs when "[t]he producer misrepresents someone else's goods or serves as his own." *Dastar Corp*., 539 U.S. at 28 n.1; *see also Fun-Damental Too*, 1997 U.S. Dist. LEXIS 9597, at *13 ("In reverse passing off, the wrongdoer sells plaintiff's products as its own.").  The distinction is important because unfair competition claims alleging reverse passing off are preempted by the Copyright Act, whereas unfair competition claims alleging passing off are not. *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, 350 F. Supp. 2d 613, 619 (E.D. Pa. 2004); *Fun-Damental Too*, 1997 US. Dist. LEXIS 9597, at *12; *Daley v. Firetree, Ltd*., No. 04-2213, 2006 U.S. Dist. LEXIS 4061, at *8-9 (M.D. Pa. Jan. 19, 2006) (citing cases).

When one reviews the allegations of the Second Amended Complaint, it is clear that Plaintiff asserts a reverse passing off claim, and not a passing off claim.  Plaintiff alleges that Defendant misappropriated Plaintiff's "proprietary business information" for its own use to sell its products in direct competition with Plaintiff.  (Second Am. Compl. ¶ 88.)  Plaintiff's claim is nothing more than a claim for unauthorized copying of its Quadratec Product Presentations, which is not different than what Plaintiff alleges in its copyright infringement claims.  In both

21

claims, Plaintiff alleges that Defendant made unauthorized copies of the Quadratec Product

Presentations for use on its own website and catalogs.  Both claims protect Plaintiff's right to

safeguard its work product.   Plaintiff's claim for misappropriation is therefore preempted by the

Copyright Act because the subject matter of the misappropriation by unfair competition claim

falls within the subject matter of copyright law, and the asserted rights of copying and

reproducing Quadratec Product Presentations is essentially equivalent to the exclusive rights

granted in Section 106 of the Copyright Act. *See Daley*, 2006 U.S. Dist. LEXIS 4061, at *8-15

(finding the plaintiff's claim for unfair competition was preempted by the Copyright Act); *Tech.*

*Based Solutions, Inc. v. Elecs. Col1. Inc.,* 168 F. Supp. 2d 375, 379 (E.D. Pa. 2001) (holding that

the plaintiff's misappropriation by unfair competition claim was preempted by the Copyright Act

because it was really a claim for unauthorized copying); *see also Info. Handling Servs., Inc. v.*

*LRP Publ'ns Inc*., No. 00-1859, 2000 U.S. Dist. LEXIS 14531 at *3-4 (E.D. Pa. Sept. 20, 2000)

(holding that "plaintiffs' misappropriation and unfair competition claim was 'really' a claim for

unauthorized copying," and was preempted by the Copyright Act); *Scranton Times, L.P. v.*

*Wilkes-Barre Publ'g Co.*, No. 08-2135, 2009 U.S. Dist. LEXIS 87261, at *18 (M.D. Pa. Sept. 23,

2009) (holding that misappropriation claim was preempted because the rights that the plaintiff

sought to enforce through that claim were "identical to those rights found in section 106 of the

Copyright Act").  Defendant's request to dismiss Plaintiff's unfair competition by

misappropriation claim will be granted.

2.  *Unjust Enrichment Claim (Count IX)*

In Count IX, Plaintiff alleges that Defendant was unjustly enriched as a result of its

illegal copying and publishing of the Quadratec Product Presentations.  (Second Am. Compl. ¶

96.)  Plaintiff further alleges that Defendant used the presentations to advertise, sell, and profit

22

from the sale of Defendant's products, at Plaintiff's expense.  (*Id*.)  Defendant seeks dismissal of

Count IX on the basis that it is preempted by the Copyright Act, contending that Plaintiff has

failed to offer anything in support of this claim that differs from the allegations that Defendant

copied and published the presentations.  Defendant argues that due to the similarities of the

claims, Plaintiff fails to meet the extra element test, which requires the dismissal of the unjust

enrichment claim on preemption grounds.  (Def.'s Mot. 13-14.)  Plaintiff responds that

Defendant received benefits beyond the mere copying and republishing of the Product

Presentations, claiming that Defendant's "free-riding" provided benefits beyond the intrinsic

value of the copyrighted content, to include profits and goodwill diverted from Plaintiff and the

ability to sell goods at a lower cost in direct competition with Plaintiff.  (Pl.'s Resp. 18-19.)

        We are not persuaded by Plaintiff's argument.  "Among courts within the Third Circuit, it

is clearly established that an action for unjust enrichment is preempted by copyright law."  *Visual*

*Commc'ns, Inc. v. Assurex Health, Inc*., No. 14-3854, 2014 U.S. Dist. LEXIS 131495, at \*25

(E.D. Pa. Sept. 18, 2014) (internal quotation marks omitted).  In both claims, Plaintiff alleges

that Defendant's act of copying and republishing the Quadratec Product Presentations caused

harm to Plaintiff and conferred a benefit on Defendant.  The subject matter of Plaintiff's unjust

enrichment claim falls within the subject matter of its copyright infringement claim.  *Fun-*

*Damental Too*, 1997 U.S. Dist. LEXIS 9597, at \*6.  "[U]njust enrichment seeks to compensate

the plaintiff for the alleged use and imitation of [its] protected [work], which rights are protected

by copyright law."  *Visual Commc'ns, Inc.*, 2014 U.S. Dist. LEXIS 131495, at \*25.  There is no

qualitative difference between the rights protected by these two claims.  *See Harris*, 2011 U.S.

Dist. LEXIS 28869, at \*12 (concluding that the plaintiffs' claim for unjust enrichment does "not

require proof of an extra element beyond 'mere copying,' and [is] substantively indistinguishable from plaintiffs' claim for copyright infringement").

We also reject Plaintiff's argument that preemption of the unjust enrichment claim is not appropriate because the benefits Defendant retained by its alleged copying of the Quadratec Product Presentations goes beyond the scope of a copyright claim.  The fact that Defendant may have received a financial benefit in the form of reduced overhead in creating the advertisements does not mean that Plaintiff's unjust enrichment claim is qualitatively different than its copyright infringement claim.  *See CollegeSource, Inc. v. Academyone, Inc*., No. 10-3542, 2012 U.S. Dist. LEXIS 153197, at *38 (E.D. Pa. Oct. 25, 2012) (concluding that unjust enrichment claim was preempted by copyright infringement claim and rejecting argument that the two claims were qualitatively different merely because "the benefit conferred was in the form of money saved instead of actual profit"); *see also Live Face on Web, LLC v. Howard Stern Prods*., 2009 U.S. Dist. LEXIS 21373, at *19 (E.D. Pa. Mar. 17, 2009) (stating that "to the extent that [the plaintiff] seeks reimbursement for any 'enrichment' received by [the defendant] from the unauthorized use of [the plaintiff's work], it has not alleged any extra element beyond copying and preparing a work derivative of [the plaintiff's work] that would qualitatively distinguish its unjust enrichment claim from its copyright claims.").  Plaintiff's unjust enrichment claim has the same subject matter as the copyright claims and protects fundamentally the same right.  Defendant's request to dismiss the unjust enrichment claim will be granted.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's Motion to Partially Dismiss Plaintiff's Second

Amended Complaint will be granted in part and denied in part.

An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**